**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| BAYVIEW LOAN SERVICING, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:13-cv-00164-RCJ-NJK |
| ALESSI & KOENIG, LLC et al., | ) ) | **ORDER** |
| Defendants. | ) ) | |
| ——————————————— | ) ) | |

     This case arises out of the foreclosure of a lien for delinquent homeowner's association fees. Pending before the Court is a Motion for Entry of Clerk's Default (ECF No. 16) and a Motion for Summary Judgment (ECF No. 18). For the reasons given herein, the Court denies the Motion for Entry of Clerk's Default and grants the Motion for Summary Judgment.

**I.     FACTS AND PROCEDURAL HISTORY**

     Non-party Jesus Simiano ("Borrower") gave non-party Silver State Financial Services ("Lender") a promissory note for $176,000, secured by a deed of trust ("DOT"), to purchase real property located at 5124 Lost Canyon Dr., North Las Vegas, NV 89031 (the "Property"). (Compl. ¶ 9, Jan. 30, 2013, ECF No. 1; DOT 1–3, July 27, 2004, ECF No. 1, at 9). Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of the DOT and Lender's nominee for the purpose of transferring the beneficial interest in the promissory note. (*See* DOT 1–3). MERS later assigned its interest in the DOT and Lender's interest in the promissory note to Plaintiff Bayview Loan Servicing, LLC ("Bayview"). (Compl. ¶ 10; Assignment, Apr. 14, 2010, ECF No. 1, at 27).

1    Defendant Alessi & Koenig, LLC ("A&K") later caused to be recorded a Notice of

2    Delinquent Assessment (Lien) ("NODA") against the Property on behalf of Defendant

3    Hometown Ovation Owners Association ("HOOA") based upon $3391.58 in delinquent fees,

4    assessments, interest, late fees, service charges, and collection costs. (Compl. ¶ 13; NODA, Feb.

5    6, 2012, ECF No. 1, at 29).   A&K then caused to be recorded a Notice of Default and Election to

6    Sell Under Homeowners Association Lien ("NOD") against the Property on behalf of HOOA,

7    alleging a total of $3541.58 in delinquencies. (Compl. ¶ 14; NOD, Mar. 12, 2012, ECF No. 1, at

8    31).   A&K then caused to be recorded a Notice of Trustee's Sale ("NOS") as to the Property on

9    behalf of HOOA, indicating a sale for December 5, 2012 based upon a total delinquency of

10   $4386.06. (Compl. ¶ 15; NOS, Oct. 22, 2012, ECF No. 1, at 33).

11   Bayview contacted A&K concerning the NOS, and the sale was postponed by agreement

12   to January 16, 2013. (Compl. ¶ 16).   Bayview claims to have tendered the full amount due to

13   A&K several times before the sale date, but A&K allegedly refused to accept payment. (*See

14   id.* ¶¶ 17–18).   A&K sold the Property at the instruction of HOOA at the January 16, 2013

15   foreclosure auction to Defendant SFR Investments Pool 1, LLC ("SFR Pool 1") or Defendant

16   SFR Investments, LLC ("SFR") (collectively, "SFR Defendants") for approximately $10,000.

17   (*Id.* ¶¶ 19, 22).   SFR Investments later contacted Bayview and communicated its position that the

18   sale had extinguished Bayview's DOT. (*Id.* ¶ 23).

19   Bayview sued A&K, HOOA, SFR Pool 1, and SFR in this Court on two causes of action:

20   (1) Wrongful Foreclosure; and (2) Declaratory Relief.[1]   A&K and HOOA have jointly moved for

21   summary judgment.

22   ///

23

24   [1]The declaratory relief claim is essentially a quiet title claim. *See Kress v.  Corey*, 189

25   P.2d 352, 364 (Nev.1948).  Plaintiff asks the Court to declare in the alternative that under state
     law the trustee's sale was void or did not extinguish the first mortgage. (*See id.* ¶¶ 34–36).

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

1   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2   versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3   626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

4   by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d

5   1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

6   allegations of the pleadings and set forth specific facts by producing competent evidence that

7   shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

8       At the summary judgment stage, a court's function is not to weigh the evidence and

9   determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

10  U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

11  to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely

12  colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

13  **III.   ANALYSIS**

14      First, the Clerk has correctly declined to enter default because Defendants have answered.

15  The Court will not enter default.  Even if the answer had been untimely—and the Court does not

16  address the issue directly—it was filed within nineteen days of the proof of service of the

17  Complaint.

18      Second, the Court grants the motion for summary judgment.  Movants adduce a series of

19  email communications concerning the offered payment and argue that the evidence shows

20  Bayview offered to make the payment but never actually tendered it.  Exhibit A is a copy of a

21  December 3, 2012 email from Bayview's attorney Benjamin Petiprin to Movants' attorney

22  Huang Lam, in which Petiprin asks Lam to extend the sale date beyond December 5, 2012 as

23  indicated in the NOS.  Exhibit B is Lam's same-day response (with attachments), offering to

24  extend the sale date for thirty days if Bayview agreed in writing by noon on the date of sale to

25  pay the total amount due of $5214.22.  Exhibit C is Petiprin's December 4, 2012 response,

1   accepting the offer and requesting that Lam respond to confirm that the sale will be postponed for

2   thirty days and that the payment would be due by the end of that extension.  Exhibit D is Lam's

3   same-day response confirming Petiprin's understanding of the agreement, i.e., that the sale would

4   be postponed until January 9, 2013, and that payment in full would be due within thirty days.[2]

5   Exhibit E is Petiprin's January 4, 2013 response (thirty-one days after the agreement to give

6   Bayview thirty days to make ful payment), indicating that he expected Bayview to have a

7   cashier's check ready in the full amount by Monday, January 7, 2013, two days before the sale

8   date, as postponed.  Exhibit F is another email from Petiprin indicating that the check was sent

9   via overnight delivery on that date (January 7, 2013) and that he expected to receive it the next

10  day, noting that Lam might not receive the check until some time on January 9, 2013, and

11  requesting that Lam postpone the sale further until the check is received.  Exhibit G is Lam's

12  response, postponing the sale until January 16, 2013[3] and confirming that the sale will be

13  canceled one funds have been transferred.  Exhibit H is Petiprin's response thanking Lam.

14  Exhibit I includes Petiprin's January 8 and 10, 2013 responses to Lam indicating that Petiprin

15  had the check and requesting written assurances that the lien will be released when it clears, as

16  well as the due date for the next HOA assessment.  Exhibit J is Lam's response reasserting that

17  the lien would be released but only after payment, as agreed.  Exhibit K is Petiprin's Thursday,

18  January 17, 2013 email to Lam (after the twice-extended sale date) confirming that he had sent

19  Lam the check via overnight delivery, in response to Lam's extension to Friday, January 18, 2013

20  and note that Lam needed the check by 2 p.m. on the 18th, because his office closed at that time.

21  Exhibit L includes a series of emails, including Lam's response to Petiprin that he had not yet

22

23  _____

[2]Apparently, Lam actually agreed to postpone the sale for thirty-five days (from December 5, 2012 to January 9, 2013).  In any case, thirty days from the December 4, 2012 email exchange would be January 3, 2012.

24

25  [3]There is a typographical error in the email indicating "1/16/2012."

1    received a response from SFR (an earlier email in the exchange noted that the extensions were

2    dependent on SFR's willingness to accept late payment and rescind, which had not yet been

3    confirmed).  It also includes Lam's January 22, 2013 email to Petiprin indicating that SFR now

4    intended to keep the property and that he would be returning the check.

5          There is no issue of breach of contract.  The issue is the equity of redemption, i.e.,

6    whether the check was tendered before the moment of sale so as to cure the default upon which

7    the sale was permitted under the foreclosure statutes and the deed of trust.  There is no genuine

8    question of fact that the default was not timely redeemed.  The check was tendered on January

9    18, 2013, after the sale.  Nor is there any issue of estoppel.  Lam informed Petiprin that although

10   he had no personal opposition to a further extension, no further extension had yet been approved

11   by his client.  There is therefore no wrongful foreclosure claim because there was an uncured

12   default at the moment of sale. *See Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623

13   (Nev. 1983).  Plaintiff offers no contrary evidence.  Movants are entitled to summary judgment

14   against that claim.

15          In response, Plaintiff argues only that the evidence in support of the motion. i.e., the

16   email exchanges, are inadmissable because they are unauthenticated, and that a genuine issue of

17   material fact remains over whether the amount of default was in fact tendered before the sale.

18   But a defendant may obtain defensive summary judgment by pointing out a lack of a plaintiff's

19   evidence in support of an essential element of a claim, without providing evidence to negate it.

20   *See Celotex Corp.*, 477 U.S. at 323–24.  Plaintiff has provided no evidence that payment was

21   tendered before sale.  Movants are entitled to summary judgment on the wrongful foreclosure

22   claim.

23          Still, the propriety of the foreclosure does not mean that Bayview does not have an

24   interest in the Property superior to that of the SFR Defendants.  The SFR Defendants are the only

25   remaining Defendants (on the quiet title claim).  The quiet title claim is not pled against

1   Movants, but only against SFR Defendants, who purchased the Property at the foreclosure sale.

2   No dispositive motion is pending on that claim, but the Court will for the benefit of the parties

3   going forward note the apparently dispositive issue concerning the quiet title action.

4       Under state law, the foreclosure of a lien for delinquent homeowner's association

5   assessments does not extinguish "[a] first security interest on the unit recorded before the date on

6   which the assessment sought to be enforced became delinquent." Nev. Rev. Stat.

7   § 1116.3116(2)(b).  The Court can take judicial notice of the fact that the DOT to Bayview's

8   predecessor-in-interest was recorded on August 4, 2004, and there is no indication that the

9   delinquencies upon which the NOD was based arose in whole or in part before this date.

10  Although Simiano appears to have taken the deed to the Property in 2000 (according to the

11  public records available on the Clark County Recorder's website), and the 2004 DOT therefore

12  probably represents a refinance by Simiano, it seems unlikely that he could have refinanced his

13  loan while his dues were delinquent or that dues have been delinquent since 2004.  And SFR

14  Defendants are clearly not bona fide purchasers, because Bayview's interest was recorded before

15  SFR Defendants bought the Property.  It therefore appears that although the foreclosure sale was

16  proper, it is extremely unlikely that it extinguished Bayview's first-position mortgage against the

17  Property.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion Entry of Clerk's Default (ECF No. 16) is

3    DENIED.

4        IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 18) is

5    GRANTED.

6        IT IS SO ORDERED.

7    Dated this 25th day of April, 2013.

8

9    _____

10                ROBERT C. JONES
                United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25