

FILED ✓
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

JUN 06 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BAYVIEW LOAN SERVICING, LLC,     )
                                 )
          Plaintiff,             )
                                 )   2:13-cv-00164-RCJ-NJK
     vs.                         )
                                 )
ALESSI & KOENIG, LLC et al.,     )   ORDER
                                 )
          Defendants.            )
_____  )

This quiet title action arises out of the foreclosure of a lien for delinquent homeowner's association ("HOA") fees. Pending before the Court are cross motions for summary judgment. For the reasons given herein, the Court grants Plaintiff's motion and denies Defendant's.

I.  **FACTS AND PROCEDURAL HISTORY**

Third-party Defendant Jesus Simiano ("Borrower") gave Third-party Defendant Silver State Financial Services ("Lender") a promissory note for $176,000, secured by a deed of trust ("DOT"), to refinance real property located at 5124 Lost Canyon Dr., North Las Vegas, NV 89031 (the "Property"). (Compl. ¶ 9, Jan. 30, 2013, ECF No. 1; DOT 1–3, July 27, 2004, ECF No. 1, at 9). Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of the DOT and Lender's nominee for the purpose of transferring the beneficial interest in the promissory note. (*See* DOT 1–3). MERS later assigned both its own interest in the DOT and Lender's interest in the promissory note to Plaintiff Bayview Loan Servicing, LLC ("Bayview"). (Compl. ¶ 10; *see* Assignment, Apr. 14, 2010, ECF No. 1, at 27).

Defendant Alessi & Koenig, LLC ("A&K") later caused to be recorded a Notice of

Delinquent Assessment (Lien) ("NODA") against the Property on behalf of Defendant Hometown Ovation Owners Association ("HOOA") based upon $3391.58 in delinquent fees, assessments, interest, late fees, service charges, and collection costs. (Compl. ¶ 13; *see* NODA, Feb. 6, 2012, ECF No. 1, at 29). A&K then caused to be recorded a Notice of Default and Election to Sell Under Homeowners Association Lien ("NOD") against the Property on behalf of HOOA, alleging a total of $3541.58 in delinquencies. (Compl. ¶ 14; *see* NOD, Mar. 12, 2012, ECF No. 1, at 31). A&K then caused to be recorded a Notice of Trustee's Sale ("NOS") as to the Property on behalf of HOOA, indicating a sale for December 5, 2012 based upon a total delinquency of $4386.06. (Compl. ¶ 15; *see* NOS, Oct. 22, 2012, ECF No. 1, at 33).

Bayview contacted A&K concerning the NOS, and A&K postponed the sale until January 16, 2013. (Compl. ¶ 16). Bayview alleges it tendered the full amount due to A&K several times before that date, but that A&K refused to accept payment. (*See id.* ¶¶ 17–18). A&K sold the Property at the instruction of HOOA at the January 16, 2013 foreclosure sale to Defendant SFR Investments Pool 1, LLC ("SFR Pool 1") or Defendant SFR Investments, LLC ("SFR") (collectively, "SFR Defendants") for approximately $10,000. (*Id.* ¶¶ 19, 22). SFR later contacted Bayview and communicated its position that the sale had extinguished Bayview's DOT. (*Id.* ¶ 23).

Bayview sued A&K, HOOA, and SFR Defendants in this Court on two causes of action: (1) Wrongful Foreclosure; and (2) Declaratory Relief.[1] A&K and HOOA jointly moved for defensive summary judgment against the wrongful foreclosure claim, and while that motion was pending, SFR Pool 1 filed its Answer, which included counterclaims and third-party claims for quiet title against Bayview, Borrower, and Lender. The Court granted the motion for summary

---

[1] The declaratory relief claim is essentially a quiet title claim. *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948). Plaintiff asks the Court to declare in the alternative that under state law the trustee's sale was void or that it did not extinguish the first mortgage. (*See id.* ¶¶ 34–36).

judgment as against the wrongful foreclosure claim. The parties have now moved for summary judgment on their remaining quiet title claims.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. ANALYSIS

In Nevada, HOAs have immediate liens against real property when HOA assessments or other costs against a unit become delinquent. *See* Nev. Rev. Stat. § 116.3116(1). Under Nevada law, a lien for delinquent HOA assessments is not prior to "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent," *id.* § 116.3116(2)(b), except:

> *to the extent of* any charges incurred by the association on a unit pursuant to NRS 116.310312 and *to the extent of* the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

*Id.* § 116.3116(2) (unnumbered paragraph following subsection (2)(c) (emphases added)).[2] In other words, a first mortgage recorded before HOA assessments become delinquent is senior to an HOA lien, except to the extent of nine months of regular HOA dues immediately preceding the action to enforce the HOA lien and any HOA fees and costs related to exterior maintenance of the unit at issue or the removal or abatement of a public nuisance related to the unit at issue.[3] It seems clear that the super-priority amount is unextinguished by foreclosure of a first mortgage, even if the first mortgage is otherwise senior under the first mortgage rule. The question is whether the foreclosure of an HOA lien including some super-priority amount extinguishes a first mortgage that has benefit of the first mortgage rule. The Court believes that the best interpretation of the statutes is that it does not.

Bayview's interpretation of the statute, with which the Court agrees, is that the first mortgage rule prevents a prior-recorded first mortgage from being extinguished by foreclosure of an HOA lien that contains a super-priority amount. Under this interpretation, an HOA lien arising *before* a first mortgage is recorded is senior to the first mortgage in all traditional respects, i.e., it survives a foreclosure of the first mortgage, and its own foreclosure extinguishes the first mortgage. But an HOA lien arising *after* a first mortgage is recorded operates unorthodoxly in relation to traditional liens. The super-priority amount is senior to an earlier-recorded first mortgage in the sense that it must be satisfied before a first mortgage upon its own foreclosure, but it is *in parity with* an earlier-recorded first mortgage with respect to

---

[2] Section 116.310312 concerns HOA fines and costs imposed when an HOA must maintain the exterior of a unit in accordance with the CC&R or remove or abate a public nuisance on the exterior of the unit where the unit owner has failed to do so. *See id.* § 116.310312(2). Section 116.3115 governs regular HOA dues. *See id.* § 116.3115.

[3] The Court will refer to this amount as the "super-priority amount" and will refer to the section of the statute defining it as the "super-priority rule." The Court will refer to any excess portion of an HOA lien, i.e., the total amount of a lien under subsection (1) minus the super-priority amount, as the "sub-priority amount." The Court will refer to subsection (2)(b) as the "first mortgage rule."

extinguishment, i.e., the foreclosure of neither extinguishes the other.

In practice, two options present themselves under this theory when a first mortgage is recorded before an HOA lien arises. First, an HOA may of course foreclose its lien under the statutes so providing, but the first mortgagee's lien survives such a foreclosure, and the first mortgagee may later foreclose against the buyer at the HOA foreclosure sale if that buyer (or someone else) does not satisfy the first mortgage out of the proceeds of the HOA foreclosure sale or otherwise. An HOA conducting a foreclosure sale will be made whole under the statute so long as the super-priority amount is satisfied by the foreclosure sale price, and if an HOA's foreclosure sale leaves some portion of its "super-priority" lien unsatisfied—which circumstances are unlikely ever to occur—it must pursue the unit owner for the deficiency. Second, a first mortgagee may foreclose while an HOA lien exists. In such a case, the super-priority amount of the HOA lien survives foreclosure, and the HOA may later foreclose against the buyer at the foreclosure sale if that buyer (or someone else) does not satisfy the super-priority amount out of the proceeds of the foreclosure sale or otherwise. In either case, any sub-priority amount of an HOA lien is extinguished along with any other junior liens. Those junior liens are satisfied in sequence of priority out of the foreclosure proceeds after the lien upon which the foreclosure was based is fully satisfied, and junior lien holders must pursue the defaulted party for any deficiencies, if they can.

In summary, an HOA may effectively have two liens: a super-priority lien, and a sub-priority lien. The foreclosure of neither a super-priority lien nor a first mortgage extinguishes the other. They are in parity with one another in this regard. But a super-priority lien must be satisfied first out of the proceeds of the foreclosure of a junior lien. It is "first amongst equals" in this regard. The sub-priority lien, on the other hand, like any other junior lien, is extinguished by the foreclosure of either the super-priority lien or the first mortgage.

Another court of this District recently ruled consistently with this interpretation, though

with less discussion. *See Diakonos Holdings, LLC v. Countrywide Home Loans*, No. 2:12-cv-00949, 2013 WL 531092, at *2–3 (D. Nev. Feb. 11, 2013) (Dawson, J.) (ruling that the foreclosure of an HOA lien containing a super-priority amount does not extinguish a first mortgage protected by the first mortgage rule). Moreover, the real estate community in Nevada clearly understands the statutes to work the way the Court finds. In the current real estate market in Nevada, most homes sold at foreclosure are purchased by investors for cash in order to renovate the homes and then resell them for a quick profit or rent them. If investors believed that HOA foreclosures extinguished first mortgages, homes sold at HOA foreclosure sales would sell for significant fractions of their fair market value, not for the tiny fractions of their fair market value approximating the HOA lien at which HOA-foreclosed homes invariably sell. That investors will not pay significant amounts, i.e. fair amounts, for HOA-foreclosed homes indicates their perception that the first mortgage survives, preventing any profit through resale. If the actors in the real estate market in Nevada believed that an HOA foreclosure extinguished the first mortgage, one would expect the Property here to have sold for something on the order of $80,000 (assuming the home is worth roughly half of the $176,000 for which Borrower refinanced it in 2004). But the Property sold for a mere $10,000, only slightly more than HOOA's lien. This shows that the Nevada real estate community does not operate as if HOA foreclosures extinguish first mortgages recorded before the HOA delinquency arises.

SFR Pool 1's interpretation of the statute is different. Under its theory, the foreclosure of HOOA's lien completely extinguished Bayview's first mortgage in the same way that the foreclosure of a first mortgage extinguishes a second mortgage (although SFR Pool 1 presumably agrees that Bayview was entitled after HOOA's foreclosure sale to satisfy its first mortgage out of the proceeds after any super-priority amount was satisfied and before any sub-priority amount was satisfied). SFR Pool 1 argues that the foreclosure of an HOA lien that includes any super-priority amount—and they always will, as the super-priority amount is defined—extinguishes a

first mortgage. Under this theory, an HOA may foreclose its lien, and the first mortgagee's lien would not survive, though it would be entitled to satisfaction from the proceeds after the super-priority amount is satisfied and before any sub-priority amount is satisfied. And a first mortgagee could still foreclose the first mortgage while an HOA lien exists, but the super-priority amount of the HOA lien would survive.

SFR Pool 1 argues that the Division of Real Estate has interpreted the statutes this way. But a close look at the relevant document indicates no such authoritative interpretation. *See* Dep't of Business and Indus., Real Estate Div., Adv. Op. No. 13-01 (Dec. 12, 2012). The relevant advisory opinion answers three questions: (1) whether the super-priority amount includes "costs of collecting" as defined under section 116.310313 (no); (2) whether the super-priority amount may ever exceed nine months of regular dues plus removal, abatement, and maintenance costs (no); and (3) whether an HOA must institute a "civil action" as defined under Nevada Rules of Civil Procedure 2 and 3 to create the super-priority lien (no). There is *obiter dicta* on page nine of the advisory opinion supporting SFR Pool 1's view. *See id.* at 9 ("The ramifications of the super priority lien are significant in light of the fact that superior liens, when foreclosed, remove all junior liens. An association can foreclose its super priority lien and the first security interest holder will either pay the super priority lien amount or lose its security."). The opinion quotes the comments to section 3-116 of the Uniform Act, noting that first mortgagees will typically pay HOA liens rather than suffer foreclosure. But that says nothing of extinguishment. A first mortgagee may pay an HOA lien rather than suffer foreclosure because it will inevitably have to foreclose itself anyway and does not wish to experience the hassle of waiting for the first foreclosure to be completed, or because it may wish to take a deed in lieu of foreclosure or authorize a short sale, and those options would be frustrated by an intermittent foreclosure by an HOA. A first mortgagee's practical desire to avoid an HOA foreclosure does not necessarily imply that the first mortgagee thinks its security would be lost thereby. The Real

Estate Division engaged in no further statutory analysis. Its *obiter dicta* in an advisory opinion directed to other issues is unpersuasive.

The Court rejects this reading of the statues. It is clear to the Court that the legislative intent was to ensure that no matter which entity forecloses, an HOA will be made whole (up to a limited amount), while also ensuring that first mortgagees who record their interest before notice of any delinquencies giving rise to a super-priority lien do not lose their security. The Court does not believe that the legislature intended the extreme result of extinguishment of a first mortgage in any case where an HOA forecloses its own lien.

The Court agrees with Bayview that interpreting the statutes as SFR Pool 1 does reads the first mortgage rule out of the statutes. The statute creating the HOA lien (subsection 116.3116(1)) is the rule. The first mortgage rule (subsection (2)(b)) is an exception to the rule. The super-priority rule (the unnumbered paragraph following subsection (2)(c)) is an exception to the exception. Because the exception to the exception here necessarily includes all instances of the rule itself—there can be no subsection (1) lien that does not include some super-priority amount, because that amount includes virtually every kind of assessment that could be delinquent, except for collection fees and costs arising therefrom—the exception under subsection (2)(b) would be totally subsumed by the exception to the exception, rendering it meaningless if its operation were not limited in a way that permits the exception to have some application. That is, in order to give each part of the statutes some effect, the Court must read them together to mean that the super-priority rule affects the priority of reimbursement, but not extinguishment. Reading the super-priority rule to affect extinguishment would read the first mortgage rule out of the statutes almost entirely.

It is true that under SFR Pool 1's interpretation, the first mortgage rule would continue to have effect in a limited class of cases when an HOA forecloses a lien containing some sub-priority amount. In such cases, the first mortgage rule will still ensure that the first mortgage is

satisfied before the sub-priority amount of the HOA lien, giving the first mortgage rule some effect. Imagine a property of fair market value V, with a first mortgage balance of M and an HOA lien with super-priority amount H1 and sub-priority amount H2. If the HOA forecloses, and if the foreclosure extinguishes the first mortgage, the order of reimbursement will be H1–M–H2. The first mortgagee is therefore no better off under the first mortgage rule in cases where $V \geq H1 + H2 + M$, because in such cases the priority of reimbursement as between H2 and M is of no consequence—the first mortgagee will be made whole in either case. The first mortgagee is only better off under SFR Pool 1's interpretation of the first mortgage rule in cases where $V<H1+H2+M$, because in such cases the first mortgagee's losses are limited to H1, whereas without the first mortgage rule, the first mortgagee's losses would be H1 + H2. So SFR Pool 1's interpretation of the statutes does retain some effect for the first mortgage rule. But the effect is only seen in cases where the fair market value of the property at the time of foreclosure is less than the amount due on the first mortgage or no more than a few thousand dollars more. Although that circumstance is common today, it is not the historical norm, and it was not common when the statutes were first adopted in 1991, over a decade before the real estate market crash made "underwater" mortgages common. *See* 1991 Nev. Stat 535, 567–68.

The legislature cannot possibly have intended the super-priority rule to divest the equally or more conspicuous first mortgage rule of any effect except in a class of cases that was rare when the statutes were adopted. Not only would such an interpretation divest the first mortgage rule of any significant application, it would cause an extreme result that the Court does not believe the legislature intended in light of long-standing historical practice, including the practice of the actors in the real estate market even after the statutes were adopted.[4]

---

[4] The Court also notes that the federal Contract Clause would likely be violated by any application of such a reading of the statutes, at least as to first mortgages recorded before the statutes took effect.

The Court rejects SFR Pool 1's argument that an HOA lien necessarily extinguishes a first mortgage because the HOA foreclosure statutes indicate, just as the general non-judicial foreclosure statutes do, that foreclosure gives the purchaser title "without equity or right of redemption." *Compare id.* § 116.31166(3), *with id.* § 107.080(5). These statutes have nothing to do with the extinguishment of junior liens. It simply means, in both cases, that a defaulted owner cannot redeem his default after the sale has occurred. These are simple and otherwise uninteresting recitations of the ancient common law rule that a sale after default "forecloses" (ends the possibility of) the "equity of redemption" (cure of the default). From here, SFR Pool 1 argues that it is indisputable that foreclosure of a senior lien extinguishes all junior liens. That is of course true as a general matter, but if the statutes in this case work as Bayview argues they do, and the Court believes they do, they work a twist on the general rule as between first mortgages and HOA liens. *See supra.* SFR Pool 1 also argues that Bayview's position that foreclosure of an HOA lien can never extinguish a first mortgage would render the last sentence of section 116.310312(4) meaningless. But this conclusion is both factually and legally wrong. Bayview does not appear to argue, and the Court does not believe, that foreclosure of an HOA lien can never extinguish a first mortgage. It seems plain that when delinquencies giving rise to an HOA lien occur *before* a first mortgage is recorded, foreclosure of the resulting HOA lien extinguishes the first mortgage, but SFR Pool 1 admits those circumstances are not present here.[5] Also, the sentence at issue reads, "The lien may be foreclosed under NRS 116.31162 to 116.31168, inclusive." *Id.* § 114.310312(4). A statute permitting foreclosure is not rendered meaningless simply because another statute permits some other lien to survive such a foreclosure. The State of Nevada may structure its foreclosure and priority laws however it sees fit. It may structure its

---

[5] It appears undisputed that the DOT to Bayview's predecessor-in-interest was recorded on August 4, 2004, such that SFR Pool 1 is clearly not a bona fide purchaser protected from Bayview's interest by the recording statute, and Defendants admit that HOA dues did not become delinquent until 2006.

laws to ensure that prior-recorded first mortgagees do not entirely lose their interest upon an HOA foreclosure, while also ensuring that HOAs are protected for certain costs they have incurred and up to nine months of delinquent fees.

In conclusion, the Court believes Bayview's interpretation of the statutes is correct. Bayview's position appears to represent the dominant understanding of the actors in the real estate market. Bayview's interpretation also gives each section of the statutes significant application and avoids an extreme result that was almost certainly not intended by the state legislature, i.e., that the foreclosure of a small lien for even $1000 of delinquent HOA dues could extinguish an earlier-recorded security interest on the order of hundreds of thousands of dollars, when the purpose behind the super-priority statute was simply to ensure that HOA's are made whole up to a certain amount.

Finally, even if HOOA's foreclosure had extinguished Bayview's first mortgage, that would not end the matter here. Bayview would still have been entitled to satisfy its first mortgage out of the sale proceeds after satisfaction of the super-priority amount of HOOA's lien. It therefore has standing to challenge the commercial reasonableness of the foreclosure sale, and the sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness. *See Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20 (Nev. 1977).

///
///
///
///
///
///

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 33) is GRANTED. The mortgage of Bayview Loan Servicing, LLC against the Property at 5124 Lost Canyon Dr., North Las Vegas, NV 89031 was not extinguished by the foreclosure sale at which SFR Investments Pool 1, LLC obtained title to the Property.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 35) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 6th day of June, 2013.

_____
ROBERT C. JONES
United States District Judge