

FILED ✓
ENTERED

RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

JUN 06 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BAYVIEW LOAN SERVICING, LLC,      )
                                   )
          Plaintiff,               )
                                   )        2:13-cv-00164-RCJ-NJK
     vs.                           )
                                   )
ALESSI & KOENIG, LLC et al.,       )              **ORDER**
                                   )
          Defendants.              )
_____)

          This quiet title action arises out of the foreclosure of a lien for delinquent homeowner's

association ("HOA") fees.  Pending before the Court are cross motions for summary judgment.

For the reasons given herein, the Court grants Plaintiff's motion and denies Defendant's.

**I.     FACTS AND PROCEDURAL HISTORY**

          Third-party Defendant Jesus Simiano ("Borrower") gave Third-party Defendant Silver

State Financial Services ("Lender") a promissory note for $176,000, secured by a deed of trust

("DOT"), to refinance real property located at 5124 Lost Canyon Dr., North Las Vegas, NV

89031 (the "Property"). (Compl. ¶ 9, Jan. 30, 2013, ECF No. 1; DOT 1–3, July 27, 2004, ECF

No. 1, at 9).  Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of

the DOT and Lender's nominee for the purpose of transferring the beneficial interest in the

promissory note. (*See* DOT 1–3).  MERS later assigned both its own interest in the DOT and

Lender's interest in the promissory note to Plaintiff Bayview Loan Servicing, LLC ("Bayview").

(Compl. ¶ 10; *see* Assignment, Apr. 14, 2010, ECF No. 1, at 27).

          Defendant Alessi & Koenig, LLC ("A&K") later caused to be recorded a Notice of

1   Delinquent Assessment (Lien) ("NODA") against the Property on behalf of Defendant

2   Hometown Ovation Owners Association ("HOOA") based upon $3391.58 in delinquent fees,

3   assessments, interest, late fees, service charges, and collection costs. (Compl. ¶ 13; *see* NODA,

4   Feb. 6, 2012, ECF No. 1, at 29).  A&K then caused to be recorded a Notice of Default and

5   Election to Sell Under Homeowners Association Lien ("NOD") against the Property on behalf of

6   HOOA, alleging a total of $3541.58 in delinquencies. (Compl. ¶ 14; *see* NOD, Mar. 12, 2012,

7   ECF No. 1, at 31).  A&K then caused to be recorded a Notice of Trustee's Sale ("NOS") as to the

8   Property on behalf of HOOA, indicating a sale for December 5, 2012 based upon a total

9   delinquency of $4386.06. (Compl. ¶ 15; *see* NOS, Oct. 22, 2012, ECF No. 1, at 33).

10          Bayview contacted A&K concerning the NOS, and A&K postponed the sale until January

11   16, 2013. (Compl. ¶ 16).  Bayview alleges it tendered the full amount due to A&K several times

12   before that date, but that A&K refused to accept payment. (*See id.* ¶¶ 17–18).  A&K sold the

13   Property at the instruction of HOOA at the January 16, 2013 foreclosure sale to Defendant SFR

14   Investments Pool 1, LLC ("SFR Pool 1") or Defendant SFR Investments, LLC ("SFR")

15   (collectively, "SFR Defendants") for approximately $10,000. (*Id.* ¶¶ 19, 22).  SFR later contacted

16   Bayview and communicated its position that the sale had extinguished Bayview's DOT. (*Id.*

17   ¶ 23).

18          Bayview sued A&K, HOOA, and SFR Defendants in this Court on two causes of action:

19   (1) Wrongful Foreclosure; and (2) Declaratory Relief.[1]  A&K and HOOA jointly moved for

20   defensive summary judgment against the wrongful foreclosure claim, and while that motion was

21   pending, SFR Pool 1 filed its Answer, which included counterclaims and third-party claims for

22   quiet title against Bayview, Borrower, and Lender.  The Court granted the motion for summary

23

24          [1]The declaratory relief claim is essentially a quiet title claim. *See Kress v. Corey*, 189
     P.2d 352, 364 (Nev. 1948). Plaintiff asks the Court to declare in the alternative that under state
25   law the trustee's sale was void or that it did not extinguish the first mortgage. (*See id.* ¶¶ 34–36).

1 | judgment as against the wrongful foreclosure claim.  The parties have now moved for summary

2 | judgment on their remaining quiet title claims.

3 | **II.     LEGAL STANDARDS**

4 |        A court must grant summary judgment when "the movant shows that there is no genuine

5 | dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6 | Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

7 | *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there

8 | is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

9 | principal purpose of summary judgment is "to isolate and dispose of factually unsupported

10 | claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

11 | judgment, a court uses a burden-shifting scheme:

12 | > When the party moving for summary judgment would bear the burden of proof at
13 | > trial, it must come forward with evidence which would entitle it to a directed verdict
   | > if the evidence went uncontroverted at trial.  In such a case, the moving party has the
   | > initial burden of establishing the absence of a genuine issue of fact on each issue
14 | > material to its case.

15 | *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

16 | and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

17 | of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

18 | presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

19 | demonstrating that the nonmoving party failed to make a showing sufficient to establish an

20 | element essential to that party's case on which that party will bear the burden of proof at trial. *See*

21 | *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary

22 | judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

23 | *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

24 |        If the moving party meets its initial burden, the burden then shifts to the opposing party to

25 | establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  ANALYSIS

In Nevada, HOAs have immediate liens against real property when HOA assessments or other costs against a unit become delinquent. *See* Nev. Rev. Stat. § 116.3116(1).  Under Nevada law, a lien for delinquent HOA assessments is not prior to "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent," *id.* § 116.3116(2)(b), except:

> *to the extent of* any charges incurred by the association on a unit pursuant to NRS 116.310312 and *to the extent of* the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

1   *Id.* § 116.3116(2) (unnumbered paragraph following subsection (2)(c) (emphases added)).[2]  In

2   other words, a first mortgage recorded before HOA assessments become delinquent is senior to

3   an HOA lien, except to the extent of nine months of regular HOA dues immediately preceding

4   the action to enforce the HOA lien and any HOA fees and costs related to exterior maintenance

5   of the unit at issue or the removal or abatement of a public nuisance related to the unit at issue.[3]

6   It seems clear that the super-priority amount is unextinguished by foreclosure of a first mortgage,

7   even if the first mortgage is otherwise senior under the first mortgage rule.   The question is

8   whether the foreclosure of an HOA lien including some super-priority amount extinguishes a first

9   mortgage that has benefit of the first mortgage rule.  The Court believes that the best

10  interpretation of the statutes is that it does not.

11          Bayview's interpretation of the statute, with which the Court agrees, is that the first

12  mortgage rule prevents a prior-recorded first mortgage from being extinguished by foreclosure of

13  an HOA lien that contains a super-priority amount.  Under this interpretation, an HOA lien

14  arising *before* a first mortgage is recorded is senior to the first mortgage in all traditional

15  respects, i.e., it survives a foreclosure of the first mortgage, and its own foreclosure extinguishes

16  the first mortgage.  But an HOA lien arising *after* a first mortgage is recorded operates

17  unorthodoxly in relation to traditional liens.  The super-priority amount is senior to an earlier-

18  recorded first mortgage in the sense that it must be satisfied before a first mortgage upon its own

19  foreclosure, but it is *in parity with* an earlier-recorded first mortgage with respect to

---

20          [2]Section 116.310312 concerns HOA fines and costs imposed when an HOA must

21  maintain the exterior of a unit in accordance with the CC&R or remove or abate a public
    nuisance on the exterior of the unit where the unit owner has failed to do so. *See id.*

22  § 116.310312(2). Section 116.3115 governs regular HOA dues. *See id.* § 116.3115.

23          [3]The Court will refer to this amount as the "super-priority amount" and will refer to the
    section of the statute defining it as the "super-priority rule." The Court will refer to any excess

24  portion of an HOA lien, i.e., the total amount of a lien under subsection (1) minus the super-
    priority amount, as the "sub-priority amount." The Court will refer to subsection (2)(b) as the

25  "first mortgage rule."

1   extinguishment, i.e., the foreclosure of neither extinguishes the other.

2          In practice, two options present themselves under this theory when a first mortgage is

3   recorded before an HOA lien arises.  First, an HOA may of course foreclose its lien under the

4   statutes so providing, but the first mortgagee's lien survives such a foreclosure, and the first

5   mortgagee may later foreclose against the buyer at the HOA foreclosure sale if that buyer (or

6   someone else) does not satisfy the first mortgage out of the proceeds of the HOA foreclosure sale

7   or otherwise.  An HOA conducting a foreclosure sale will be made whole under the statute so

8   long as the super-priority amount is satisfied by the foreclosure sale price, and if an HOA's

9   foreclosure sale leaves some portion of its "super-priority" lien unsatisfied—which

10  circumstances are unlikely ever to occur—it must pursue the unit owner for the deficiency.

11  Second, a first mortgagee may foreclose while an HOA lien exists.  In such a case, the super-

12  priority amount of the HOA lien survives foreclosure, and the HOA may later foreclose against

13  the buyer at the foreclosure sale if that buyer (or someone else) does not satisfy the super-priority

14  amount out of the proceeds of the foreclosure sale or otherwise.  In either case, any sub-priority

15  amount of an HOA lien is extinguished along with any other junior liens.  Those junior liens are

16  satisfied in sequence of priority out of the foreclosure proceeds after the lien upon which the

17  foreclosure was based is fully satisfied, and junior lien holders must pursue the defaulted party

18  for any deficiencies, if they can.

19         In summary, an HOA may effectively have two liens: a super-priority lien, and a sub-

20  priority lien.  The foreclosure of neither a super-priority lien nor a first mortgage extinguishes the

21  other.  They are in parity with one another in this regard.  But a super-priority lien must be

22  satisfied first out of the proceeds of the foreclosure of a junior lien.  It is "first amongst equals" in

23  this regard.  The sub-priority lien, on the other hand, like any other junior lien, is extinguished by

24  the foreclosure of either the super-priority lien or the first mortgage.

25         Another court of this District recently ruled consistently with this interpretation, though

1   with less discussion. *See Diakonos Holdings, LLC v. Countrywide Home Loans*, No. 2:12-cv-

2   00949, 2013 WL 531092, at *2–3 (D. Nev. Feb. 11, 2013) (Dawson, J.) (ruling that the

3   foreclosure of an HOA lien containing a super-priority amount does not extinguish a first

4   mortgage protected by the first mortgage rule).  Moreover, the real estate community in Nevada

5   clearly understands the statutes to work the way the Court finds.  In the current real estate market

6   in Nevada, most homes sold at foreclosure are purchased by investors for cash in order to

7   renovate the homes and then resell them for a quick profit or rent them.  If investors believed that

8   HOA foreclosures extinguished first mortgages, homes sold at HOA foreclosure sales would sell

9   for significant fractions of their fair market value, not for the tiny fractions of their fair market

10  value approximating the HOA lien at which HOA-foreclosed homes invariably sell.  That

11  investors will not pay significant amounts, i.e. fair amounts, for HOA-foreclosed homes indicates

12  their perception that the first mortgage survives, preventing any profit through resale.  If the

13  actors in the real estate market in Nevada believed that an HOA foreclosure extinguished the first

14  mortgage, one would expect the Property here to have sold for something on the order of $80,000

15  (assuming the home is worth roughly half of the $176,000 for which Borrower refinanced it in

16  2004).  But the Property sold for a mere $10,000, only slightly more than HOOA's lien.  This

17  shows that the Nevada real estate community does not operate as if HOA foreclosures extinguish

18  first mortgages recorded before the HOA delinquency arises.

19          SFR Pool 1's interpretation of the statute is different.  Under its theory, the foreclosure

20  of HOOA's lien completely extinguished Bayview's first mortgage in the same way that the

21  foreclosure of a first mortgage extinguishes a second mortgage (although SFR Pool 1 presumably

22  agrees that Bayview was entitled after HOOA's foreclosure sale to satisfy its first mortgage out

23  of the proceeds after any super-priority amount was satisfied and before any sub-priority amount

24  was satisfied).  SFR Pool 1 argues that the foreclosure of an HOA lien that includes any super-

25  priority amount—and they always will, as the super-priority amount is defined—extinguishes a

1    first mortgage. Under this theory, an HOA may foreclose its lien, and the first mortgagee's lien

2    would not survive, though it would be entitled to satisfaction from the proceeds after the super-

3    priority amount is satisfied and before any sub-priority amount is satisfied. And a first

4    mortgagee could still foreclose the first mortgage while an HOA lien exists, but the super-priority

5    amount of the HOA lien would survive.

6        SFR Pool 1 argues that the Division of Real Estate has interpreted the statutes this way.

7    But a close look at the relevant document indicates no such authoritative interpretation.

8    *See* Dep't of Business and Indus., Real Estate Div., Adv. Op. No. 13-01 (Dec. 12, 2012). The

9    relevant advisory opinion answers three questions: (1) whether the super-priority amount

10   includes "costs of collecting" as defined under section 116.310313 (no); (2) whether the super-

11   priority amount may ever exceed nine months of regular dues plus removal, abatement, and

12   maintenance costs (no); and (3) whether an HOA must institute a "civil action" as defined under

13   Nevada Rules of Civil Procedure 2 and 3 to create the super-priority lien (no). There is *obiter*

14   *dicta* on page nine of the advisory opinion supporting SFR Pool 1's view. *See id.* at 9 ("The

15   ramifications of the super priority lien are significant in light of the fact that superior liens, when

16   foreclosed, remove all junior liens. An association can foreclose its super priority lien and the

17   first security interest holder will either pay the super priority lien amount or lose its security.").

18   The opinion quotes the comments to section 3-116 of the Uniform Act, noting that first

19   mortgagees will typically pay HOA liens rather than suffer foreclosure. But that says nothing of

20   extinguishment. A first mortgagee may pay an HOA lien rather than suffer foreclosure because it

21   will inevitably have to foreclose itself anyway and does not wish to experience the hassle of

22   waiting for the first foreclosure to be completed, or because it may wish to take a deed in lieu of

23   foreclosure or authorize a short sale, and those options would be frustrated by an intermittent

24   foreclosure by an HOA. A first mortgagee's practical desire to avoid an HOA foreclosure does

25   not necessarily imply that the first mortgagee thinks its security would be lost thereby. The Real

1   Estate Division engaged in no further statutory analysis. Its *obiter dicta* in an advisory opinion

2   directed to other issues is unpersuasive.

3            The Court rejects this reading of the statues. It is clear to the Court that the legislative

4   intent was to ensure that no matter which entity forecloses, an HOA will be made whole (up to a

5   limited amount), while also ensuring that first mortgagees who record their interest before notice

6   of any delinquencies giving rise to a super-priority lien do not lose their security. The Court does

7   not believe that the legislature intended the extreme result of extinguishment of a first mortgage

8   in any case where an HOA forecloses its own lien.

9            The Court agrees with Bayview that interpreting the statutes as SFR Pool 1 does reads the

10  first mortgage rule out of the statutes. The statute creating the HOA lien (subsection

11  116.3116(1)) is the rule. The first mortgage rule (subsection (2)(b)) is an exception to the rule.

12  The super-priority rule (the unnumbered paragraph following subsection (2)(c)) is an exception

13  to the exception. Because the exception to the exception here necessarily includes all instances

14  of the rule itself—there can be no subsection (1) lien that does not include some super-priority

15  amount, because that amount includes virtually every kind of assessment that could be

16  delinquent, except for collection fees and costs arising therefrom—the exception under

17  subsection (2)(b) would be totally subsumed by the exception to the exception, rendering it

18  meaningless if its operation were not limited in a way that permits the exception to have some

19  application. That is, in order to give each part of the statutes some effect, the Court must read

20  them together to mean that the super-priority rule affects the priority of reimbursement, but not

21  extinguishment. Reading the super-priority rule to affect extinguishment would read the first

22  mortgage rule out of the statutes almost entirely.

23           It is true that under SFR Pool 1's interpretation, the first mortgage rule would continue to

24  have effect in a limited class of cases when an HOA forecloses a lien containing some sub-

25  priority amount. In such cases, the first mortgage rule will still ensure that the first mortgage is

1   satisfied before the sub-priority amount of the HOA lien, giving the first mortgage rule some

2   effect. Imagine a property of fair market value V, with a first mortgage balance of M and an

3   HOA lien with super-priority amount H1 and sub-priority amount H2. If the HOA forecloses,

4   and if the foreclosure extinguishes the first mortgage, the order of reimbursement will be

5   H1–M–H2. The first mortgagee is therefore no better off under the first mortgage rule in cases

6   where $V \geq H1 + H2 + M$, because in such cases the priority of reimbursement as between H2 and

7   M is of no consequence—the first mortgagee will be made whole in either case. The first

8   mortgagee is only better off under SFR Pool 1's interpretation of the first mortgage rule in cases

9   where $V < H1 + H2 + M$, because in such cases the first mortgagee's losses are limited to H1,

10  whereas without the first mortgage rule, the first mortgagee's losses would be H1 + H2. So SFR

11  Pool 1's interpretation of the statutes does retain some effect for the first mortgage rule. But the

12  effect is only seen in cases where the fair market value of the property at the time of foreclosure

13  is less than the amount due on the first mortgage or no more than a few thousand dollars more.

14  Although that circumstance is common today, it is not the historical norm, and it was not

15  common when the statutes were first adopted in 1991, over a decade before the real estate market

16  crash made "underwater" mortgages common. *See* 1991 Nev. Stat 535, 567–68.

17      The legislature cannot possibly have intended the super-priority rule to divest the equally

18  or more conspicuous first mortgage rule of any effect except in a class of cases that was rare

19  when the statutes were adopted. Not only would such an interpretation divest the first mortgage

20  rule of any significant application, it would cause an extreme result that the Court does not

21  believe the legislature intended in light of long-standing historical practice, including the practice

22  of the actors in the real estate market even after the statutes were adopted.[4]

23

24      [4]The Court also notes that the federal Contract Clause would likely be violated by any
    application of such a reading of the statutes, at least as to first mortgages recorded before the
25  statutes took effect.

1    The Court rejects SFR Pool 1's argument that an HOA lien necessarily extinguishes a

2    first mortgage because the HOA foreclosure statutes indicate, just as the general non-judicial

3    foreclosure statutes do, that foreclosure gives the purchaser title "without equity or right of

4    redemption." *Compare id.* § 116.31166(3), *with id.* § 107.080(5). These statutes have nothing to

5    do with the extinguishment of junior liens. It simply means, in both cases, that a defaulted owner

6    cannot redeem his default after the sale has occurred. These are simple and otherwise

7    uninteresting recitations of the ancient common law rule that a sale after default "forecloses"

8    (ends the possibility of) the "equity of redemption" (cure of the default). From here, SFR Pool 1

9    argues that it is indisputable that foreclosure of a senior lien extinguishes all junior liens. That is

10   of course true as a general matter, but if the statutes in this case work as Bayview argues they do,

11   and the Court believes they do, they work a twist on the general rule as between first mortgages

12   and HOA liens. *See supra.* SFR Pool 1 also argues that Bayview's position that foreclosure of an

13   HOA lien can never extinguish a first mortgage would render the last sentence of section

14   116.310312(4) meaningless. But this conclusion is both factually and legally wrong. Bayview

15   does not appear to argue, and the Court does not believe, that foreclosure of an HOA lien can

16   never extinguish a first mortgage. It seems plain that when delinquencies giving rise to an HOA

17   lien occur *before* a first mortgage is recorded, foreclosure of the resulting HOA lien extinguishes

18   the first mortgage, but SFR Pool 1 admits those circumstances are not present here.[5] Also, the

19   sentence at issue reads, "The lien may be foreclosed under NRS 116.31162 to 116.31168,

20   inclusive." *Id.* § 114.310312(4). A statute permitting foreclosure is not rendered meaningless

21   simply because another statute permits some other lien to survive such a foreclosure. The State

22   of Nevada may structure its foreclosure and priority laws however it sees fit. It may structure its

23   

24   [5]It appears undisputed that the DOT to Bayview's predecessor-in-interest was recorded on
August 4, 2004, such that SFR Pool 1 is clearly not a bona fide purchaser protected from
25   Bayview's interest by the recording statute, and Defendants admit that HOA dues did not become
delinquent until 2006.

1    laws to ensure that prior-recorded first mortgagees do not entirely lose their interest upon an

2    HOA foreclosure, while also ensuring that HOAs are protected for certain costs they have

3    incurred and up to nine months of delinquent fees.

4        In conclusion, the Court believes Bayview's interpretation of the statutes is correct.

5    Bayview's position appears to represent the dominant understanding of the actors in the real

6    estate market. Bayview's interpretation also gives each section of the statutes significant

7    application and avoids an extreme result that was almost certainly not intended by the state

8    legislature, i.e., that the foreclosure of a small lien for even $1000 of delinquent HOA dues could

9    extinguish an earlier-recorded security interest on the order of hundreds of thousands of dollars,

10   when the purpose behind the super-priority statute was simply to ensure that HOA's are made

11   whole up to a certain amount.

12       Finally, even if HOOA's foreclosure had extinguished Bayview's first mortgage, that

13   would not end the matter here. Bayview would still have been entitled to satisfy its first

14   mortgage out of the sale proceeds after satisfaction of the super-priority amount of HOOA's lien.

15   It therefore has standing to challenge the commercial reasonableness of the foreclosure sale, and

16   the sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably

17   worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts

18   as to commercial reasonableness. *See Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20

19   (Nev. 1977).

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 33) is GRANTED.  The mortgage of Bayview Loan Servicing, LLC against the Property at 5124 Lost Canyon Dr., North Las Vegas, NV 89031 was not extinguished by the foreclosure sale at which SFR Investments Pool 1, LLC obtained title to the Property.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 35) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 6th day of June, 2013.

ROBERT C. JONES
United States District Judge