1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

6
7
8
9
10
11

BAYVIEW LOAN SERVICING, LLC,      )
                                  )
            Plaintiff,            )
                                  )        2:13-cv-00164-RCJ-NJK
      vs.                         )
                                  )
ALESSI & KOENIG, LLC et al.,      )            **ORDER**
                                  )
            Defendants.           )
_____    )

12
13
14

     This quiet title action arises out of the foreclosure of a lien for delinquent homeowner's association ("HOA") fees.  Pending before the Court is a Motion to Reconsider (ECF No. 41). For the reasons given herein, the Court denies the motion.

15
**I.     FACTS AND PROCEDURAL HISTORY**

16
17
18
19
20
21
22
23
24

     Third-party Defendant Jesus Simiano ("Borrower") gave Third-party Defendant Silver State Financial Services ("Lender") a promissory note for $176,000, secured by a deed of trust ("DOT"), to refinance real property located at 5124 Lost Canyon Dr., North Las Vegas, NV 89031 (the "Property"). (Compl. ¶ 9, Jan. 30, 2013, ECF No. 1; DOT 1–3, July 27, 2004, ECF No. 1, at 9).  Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of the DOT and Lender's nominee for the purpose of transferring the beneficial interest in the promissory note. (*See* DOT 1–3).  MERS later assigned both its own interest in the DOT and Lender's interest in the promissory note to Plaintiff Bayview Loan Servicing, LLC ("Bayview"). (Compl. ¶ 10; *see* Assignment, Apr. 14, 2010, ECF No. 1, at 27).

25
     Defendant Alessi & Koenig, LLC ("A&K") later caused to be recorded a Notice of

Delinquent Assessment (Lien) ("NODA") against the Property on behalf of Defendant

Hometown Ovation Owners Association ("HOOA") based upon $3391.58 in delinquent fees,

assessments, interest, late fees, service charges, and collection costs. (Compl. ¶ 13; *see* NODA,

Feb. 6, 2012, ECF No. 1, at 29).  A&K then caused to be recorded a Notice of Default and

Election to Sell Under Homeowners Association Lien ("NOD") against the Property on behalf of

HOOA, alleging a total of $3541.58 in delinquencies. (Compl. ¶ 14; *see* NOD, Mar. 12, 2012,

ECF No. 1, at 31).  A&K then caused to be recorded a Notice of Trustee's Sale ("NOS") as to the

Property on behalf of HOOA, indicating a sale for December 5, 2012 based upon a total

delinquency of $4386.06. (Compl. ¶ 15; *see* NOS, Oct. 22, 2012, ECF No. 1, at 33).

Bayview contacted A&K concerning the NOS, and A&K postponed the sale until January

16, 2013. (Compl. ¶ 16).  Bayview alleges it tendered the full amount due to A&K several times

before that date, but that A&K refused to accept payment. (*See id.* ¶¶ 17–18).  A&K sold the

Property at the instruction of HOOA at the January 16, 2013 foreclosure sale to Defendant SFR

Investments Pool 1, LLC ("SFR Pool 1") or Defendant SFR Investments, LLC ("SFR")

(collectively, "SFR Defendants") for approximately $10,000. (*Id.* ¶¶ 19, 22).  SFR later contacted

Bayview and communicated its position that the sale had extinguished Bayview's DOT. (*Id.*

¶ 23).

Bayview sued A&K, HOOA, and SFR Defendants in this Court on two causes of action:

(1) Wrongful Foreclosure; and (2) Declaratory Relief.[1]  A&K and HOOA jointly moved for

defensive summary judgment against the wrongful foreclosure claim, and while that motion was

pending, SFR Pool 1 filed its Answer, which included counterclaims and third-party claims for

quiet title against Bayview, Borrower, and Lender.  The Court granted the motion for summary

---

[1]The declaratory relief claim is essentially a quiet title claim. *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948).  Plaintiff asks the Court to declare in the alternative that under state law the trustee's sale was void or that it did not extinguish the first mortgage. (*See id.* ¶¶ 34–36).

1  judgment as against the wrongful foreclosure claim. Bayview and SFR Pool 1 filed cross

2  motions for summary judgment on the remaining quiet title claims. The Court granted

3  Bayview's motion and denied SFR Pool 1's. SFR Pool 1 has asked the Court to reconsider.

4  **II.   DISCUSSION**

5      The Court ruled that the best interpretation of Nevada Revised Statutes ("NRS") section

6  116.3116 is that the foreclosure of an HOA lien with some super-priority amount did not

7  extinguish a first mortgage recorded before the delinquency giving rise to the HOA lien began.

8  In short, the Court reasoned that this interpretation reflected the understanding of the actors in the

9  real estate industry in the twenty-two years the statute has been in effect, and that although a

10  contrary interpretation would be within the realm of reason, it would read the first mortgage rule

11  out of the statute except in a small class of cases that was historically rare when the statute was

12  adopted.

13      SFR Pool 1 asks the Court to reconsider, introducing "new evidence" in support. The

14  first piece of evidence is an affidavit and other writings by Mr. Carl Lisman. (*See* Lisman Aff.,

15  June 17, 2013, ECF No. 41-1, at 27). Lisman has been a Commissioner with the National

16  Conference of Commissioners on Uniform State Laws since 1976 (the "Conference"). (*Id.* ¶ 2).

17  He participated in the drafting of the Uniform Common Interest Ownership Act (the "Act") in its

18  various forms, the 1982 version of which, with some modification, is the basis of the disputed

19  statute. (*Id.* ¶¶ 2–4, 12). Lisman attests in relevant part that the Commission intended for

20  foreclosure of an HOA lien to extinguish the first mortgage. (*See id.* ¶ 17).

21      The Court notes that the information in the affidavit is not new evidence unavailable at

22  the time the Court made its ruling. Even if it were, it is not helpful to determine the intent of the

23  Nevada Legislature in 1991. The Court does, in appropriate cases, consult legislative history if

24  necessary to determine the intent of legislation, not in an attempt to discern the subjective

25  thoughts of the legislators who adopt a statute or an amendment thereto, which is inapposite to

the objective effects of laws a legislature passes, but rather to infer or exclude certain

interpretations based upon the chronology of the adoption of statutes and amendments.  The

history of the adoption of a uniform act by a non-governmental organization—and even more so

the subjective thoughts of the commissioners—is inapposite to the intent of a legislature adopting

some version of that uniform act.  The Court respectfully believes that the state court—whose

order in an unrelated case SFR Pool 1 adduces as persuasive evidence—gave the comments to

the uniform law inappropriate weight, i.e., any weight, in assessing the Nevada Legislature's own

intentions. (*See* Order 10, May 30, 2013, ECF No. 41-1, at 52).  Comments to secondary

materials, such as restatements of the law, can be helpful in appropriate contexts, such as the

interpretation of common law principles adopted by a state supreme court.  And comments to

actual legislation or rules approved by a legislative or rule-making body are themselves

authoritative.  But comments by a private organization made to a law proposed by that

organization, when those comments are not adopted by the relevant legislature along with the

text of the proposed legislation itself, are not so helpful.  And the actual legislative history of

section 116.3116 that is available is not helpful beyond the text of the Act itself in this case. *See*

http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/1991/AB221,1991pt1.pdf;

http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/1991/AB221,1991pt2.pdf.

An organization may publish a proposed act with a certain range of intentions and expectations

as to the proposed law's effect, and a legislature may publish it in whole or in part with

somewhat or totally different ranges of intentions and expectations.  Lisman's affidavit

concerning the intent behind the uniform act is not even particularly helpful for the purpose of

proving the intent and expectations of the uniform act itself.  He attests as to his personal beliefs

about the intent and expected effect of the uniform act, but he is not competent to testify as to the

subjective beliefs or intentions of the other drafters or editors.  And his affidavit today does not

1   constitute any part of the "legislative history," so to speak, of the uniform act.  SFR Pool 1

2   adduces no contemporary records of the Conference's deliberations on the uniform act.

3         The second piece of evidence SFR Pool 1 adduces concerns recent legislative history in

4   the Nevada Legislature.  Assembly Bill 280, which has been signed by the Governor, amends

5   section 116.3116 in ways not relevant to the present dispute.  The Legislature ultimately rejected

6   (after the Assembly first overwhelmingly approved it) a proposed amendment to the bill that

7   would have clarified the super-priority and first mortgage rules in a way mostly consistent with

8   this Court's previous interpretation.  SFR Pool 1 argues that because the Legislature rejected an

9   amendment that would have clarified that the statute functions as the Court has interpreted it, the

10  Legislature has implied its intention for the statute to function as SFR Pool 1 urges.  SFR Pool 1

11  also notes that the Legislature rejected the amendment after Lister's own testimony.  This

12  evidence is more helpful, but it does not indicate that the intent behind the disputed statute is

13  what SFR Pool 1 urges it is.  The Legislature's inaction in the recent session as to the disputed

14  provisions of the statute still leaves the Court to sort out the 1991 Legislature's intentions.  That

15  is to say, it is plainly irrelevant what today's Legislature thinks of a law it did not create or alter

16  in any relevant way.  And to the extent it may be relevant, it indicates in this case an intent to

17  maintain the status quo.  The Legislature was certainly made aware of the varying judicial

18  interpretations of the current statute.  Had the Legislature wished to clarify that the statute

19  operates as SFR Pool 1 urges, it could have done so.  But it chose inaction.  In summary, the

20  2013 Legislature's choice to reject an amendment to a 1991 statute tells us nothing of the 1991

21  Legislature's intent in passing the statute, and even as to the 2013 Legislature's own intent, it

22  tells us only that the 2013 Legislature preferred inaction over any clarification.  The inescapable

23  conclusion is that the 2013 Legislature preferred to maintain the current operation and conflicting

24  judicial interpretations of the law rather than risk the political liability that might have resulted

25  from any amendment favoring one faction over another, i.e., HOAs over banks or vice versa.

1    Fair enough, but that leaves the Court where it started, and the Court finds no basis for

2    reconsideration.

3                                              **CONCLUSION**

4              IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 41) is DENIED.

5              IT IS SO ORDERED.

6    Dated this 30th day of July, 2013.

7                                                        _____

8                                                              ROBERT C. JONES
                                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25