# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BAYVIEW LOAN SERVICING, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ALESSI & KOENIG, LLC et al.,<br><br>　　　　　　Defendants. | 2:13-cv-00164-RCJ-NJK<br><br>**ORDER** |

This quiet title action arises out of the foreclosure of a lien for delinquent homeowner's association ("HOA") fees. Third-party Defendant Jesus Simiano ("Borrower") gave Third-party Defendant Silver State Financial Services ("Lender") a promissory note for $176,000, secured by a deed of trust ("DOT"), to refinance real property located at 5124 Lost Canyon Dr., North Las Vegas, NV 89031 (the "Property"). (Compl. ¶ 9, Jan. 30, 2013, ECF No. 1; DOT 1–3, July 27, 2004, ECF No. 1, at 9). Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of the DOT and Lender's nominee for the purpose of transferring the beneficial interest in the promissory note. (*See* DOT 1–3). MERS later assigned both its own interest in the DOT and Lender's interest in the promissory note to Plaintiff Bayview Loan Servicing, LLC ("Bayview"). (Compl. ¶ 10; *see* Assignment, Apr. 14, 2010, ECF No. 1, at 27).

Defendant Alessi & Koenig, LLC ("A&K") later caused to be recorded a Notice of Delinquent Assessment (Lien) ("NODA") against the Property on behalf of Defendant Hometown Ovation Owners Association ("HOOA") based upon $3391.58 in delinquent fees, assessments, interest, late fees, service charges, and collection costs. (Compl. ¶ 13; *see* NODA,

Feb. 6, 2012, ECF No. 1, at 29). A&K then caused to be recorded a Notice of Default and Election to Sell Under Homeowners Association Lien ("NOD") against the Property on behalf of HOOA, alleging a total of $3541.58 in delinquencies. (Compl. ¶ 14; *see* NOD, Mar. 12, 2012, ECF No. 1, at 31). A&K then caused to be recorded a Notice of Trustee's Sale ("NOS") as to the Property on behalf of HOOA, indicating a sale for December 5, 2012 based upon a total delinquency of $4386.06. (Compl. ¶ 15; *see* NOS, Oct. 22, 2012, ECF No. 1, at 33).

Bayview contacted A&K concerning the NOS, and A&K postponed the sale until January 16, 2013. (Compl. ¶ 16). Bayview alleges it tendered the full amount due to A&K several times before that date, but that A&K refused to accept payment. (*See id.* ¶¶ 17–18). A&K sold the Property at the instruction of HOOA at the January 16, 2013 foreclosure sale to Defendant SFR Investments Pool 1, LLC ("SFR Pool 1") or Defendant SFR Investments, LLC ("SFR") (collectively, "SFR Defendants") for approximately $10,000. (*Id.* ¶¶ 19, 22). SFR later contacted Bayview and communicated its position that the sale had extinguished Bayview's DOT. (*Id.* ¶ 23).

Bayview sued A&K, HOOA, and SFR Defendants in this Court on two causes of action: (1) Wrongful Foreclosure; and (2) Declaratory Relief.[1] A&K and HOOA jointly moved for defensive summary judgment against the wrongful foreclosure claim, and while that motion was pending, SFR Pool 1 filed its Answer, which included counterclaims and third-party claims for quiet title against Bayview, Borrower, and Lender. The Court granted the motion for summary judgment as against the wrongful foreclosure claim. Bayview and SFR Pool 1 filed cross motions for summary judgment on the remaining quiet title claims. The Court granted Bayview's motion and denied SFR Pool 1's, ruling that an HOA foreclosure under NRS section

---

[1] The declaratory relief claim is essentially a quiet title claim. *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948). Plaintiff asks the Court to declare in the alternative that under state law the trustee's sale was void or that it did not extinguish the first mortgage. (*See id.* ¶¶ 34–36).

1  116.3116 did not extinguish a first mortgage.  The Court denied reconsideration.

2        SFR Pool 1 appealed.  The Court of Appeals denied SFR Pool 1's motion to enjoin
3  foreclosure by Bayview pending appeal because SFR Pool 1 had not so moved in this Court first.
4  SFR Pool 1 reports that Bayview puchased the Property at a trustee's sale via a credit bid of
5  $78,200 on August 29, 2013.  SFR Pool 1 now asks the Court to either enjoin Bayview's further
6  sale of the property or to permit SFR Pool 1 to file a notice of lis pendens on the Property.

7        "While an appeal is pending from an interlocutory order or final judgment that grants,
8  dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction
9  on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c).
10 First, SFR Pool 1 has not shown a likelihood of success on the merits.  SFR Pool 1 makes no
11 new arguments in support of its present motion and has not at all addressed an independent
12 barrier to its success in this case that the Court pointed out in its original summary judgment
13 order: the apparent commercial unreasonableness of the HOA sale.

14       Second, and most importantly, SFR Pool 1 has not shown a likelihood of irreparable
15 harm.  It has not in fact shown any chance at all of irreparable harm.  Although SFR Pool 1 is
16 correct that real property need not be intended as the purchaser's residence for its loss to be
17 considered legally irreparable, the intent of the purchaser with respect to the property is still
18 relevant to whether its loss would be irreparable. *See Gonzales v. Desert Land, LLC*, No. 3:11-
19 cv-613, 2014 WL 132134, at *2 (D. Nev. Jan. 10, 2014) (Jones, J.) (ruling that the loss of an
20 alleged equitable lien against real property was reparable via money damages because such a
21 lienor's only interest in the relevant property is his right to sell it to satisfy a debt).  Each parcel
22 of land is considered "unique."  That fact is relevant when the unique aspects of the land have a
23 nexus with a party's intended use, e.g., residence, commerce, recreation, etc.  But when the
24 intended "use" is nothing more than resale, the uniqueness of the land relates only to the price
25 that can be obtained at resale minus the cost of renovation, i.e., the profit that can be made via

resale. That is, if land is purchased merely to be resold and/or rented, it is being treated by the purchaser as a fungible commodity, and such a party can be made whole via money damages regardless of whether he might have been entitled to equitable relief had he intended to keep and use the land. *Watkins v. Paul*, 511 P.2d 781, 783 (Idaho 1973) ("The evidence fails to show that the plaintiffs need the land in question for any particular, unique purpose, which is one of the main reasons for granting specific performance; on the contrary, the plaintiffs' own evidence shows that they seek to obtain the land only so that they may resell it for profit. Under these circumstances, specific performance would bring the plaintiffs no greater relief than would damages in the amount of their lost profit."). *Cf. Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996) (Posner, C.J.) ("In a case in which, although the contract is for the sale of an entire business, the buyer's negotiations to resell the property enable his loss from the breach to be exactly monetized, the case for specific performance collapses."). The Supreme Court of South Carolina long ago reached a similar conclusion in denying specific performance to an aggrieved speculator. *See Schmid v. Witten*, 103 S.E. 553, 553–54 (S.C. 1920) ("The respondent did not enter into the contract to purchase a home, but the only inference from the evidence is that he was on the make. . . . One of the curses of the country at present is the gambling speculative craze, whereby a lot are out for easy money and a desire for quick riches. . . . I do not intend by my aid and assistance to encourage such wildcat, speculative craze, and bring about disaster. We had a case where the original purchase price was $10,000, and by subsequent "shoe-string sales" the last purchaser agreed to give $45,000. The collapse came, and under foreclosure proceedings the property brought a little over $10,000. All persons who have the good of their community at heart deplore the loose way that these transactions are conducted, and want them done away with. Practically, no earnest money passed between appellant and respondent. Respondent does not claim to have put any valuable improvement on the land. He never offered to comply until he saw a profit in it, by option, to another.").

1    The Court does not mean to disparage SFR Pool 1's business model.  Buying distressed
2 homes for renovation and resale is a legitimate endeavor (although the practice can contribute to
3 bubble–crash cycles), and SFR Pool 1 is not engaged in "shoe-string" speculation to the Court's
4 knowledge, but the fact remains that SFR Pool 1 has no interest in the unique characteristics of
5 the land.  It does not appear disputed that SFR Pool 1 is a "house-flipping" company whose
6 interest in the Property is not to use it but only to resell it.  Under these circumstances, the fact
7 that land may be unique as to one who desires to use it does not offer support for the argument
8 that loss of the land will be irreparable as to SFR Pool 1.  SFR Pool 1 has always intended to sell
9 the land for a profit, not to retain it for any use, whether residential, commercial, or recreational,
10 and any lost profit can be calculated sum certain to make SFR Pool 1 whole.

## CONCLUSION

12    IT IS HEREBY ORDERED that the Motion for Injunction Pending Appeal (ECF No. 50)
13 is DENIED.

14    IT IS SO ORDERED.

15 Dated this 24th day of March, 2014.

_____
ROBERT C. JONES
United States District Judge